AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

BLACK AND SILVER ZTE CELLULAR TELEPHONE FCC ID: SRQ-Z320 CURRENTLY IN LAW ENFORCEMENT CUSTODY IN MONTGOMERY CO., OHIO

Case No. 3:17 mj 561
MICHAEL J. NEWMAN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (INCORPORATED BY REFERENCE)

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (INCORPORATED BY REFERENCE)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841/846 | distribution of controlled substances/conspiracy to distribute controlled substances |
| 18 USC 922(g) | felon in possession of a firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO FREDERICK D. ZOLLERS, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/6/17

*Judge's signature*

City and state: DAYTON, OHIO    MICHAEL J. NEWMAN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

1. The properties to be searched are:

   (1) Black and silver ZTE cellular telephone FCC ID: SRQ-Z320;

   (2) Black and silver Alcatel Onetouch cellular telephone FCC ID: 2ACCJB011;

   (3) Black and silver LG cellular telephone FCC ID: ZNFK330;

   (4) Blue and black Samsung cellular telephone FCC ID: A3LSMB311V;

   (5) White and silver cellular telephone FCC ID: BCG-E3087A.

hereinafter the "Devices." The Devices are currently located in law enforcement custody within Montgomery County, Ohio.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 922(g), "Conspiracy," "Possession with Intent to Distribute a Controlled Substance," being a "Felon in Possession of a Firearm," and involve ELLIOT, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any communications between ELLIOTT and associates related to drug trafficking;

   e. any communications between ELLIOTT and associates related to meetings, places, and dates;

   f. any information recording ELLIOTT's GPS information;

   g. any images or video displaying ELLIOTT with drugs, large amounts of money, and/or firearms;

   h. information for social media accounts and/or email accounts for ELLIOTT;

   i. all bank records, checks, credit card bills, account information, and other financial records.

    2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## I.

## INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property described in Attachment A—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a sworn law enforcement officer in the State of Ohio and have been employed by the Montgomery County Ohio Sheriff's Office for the past ten years. I am currently a deputized Task Force Officer (TFO) assigned to the FBI's Southern Ohio Safe Streets Task Force (SOSSTF), Dayton Resident Agency and have served in that capacity since November 2014. I am familiar with state and federal criminal laws including, but not limited to, federal drug trafficking and firearm offenses.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The properties to be searched are:

(1) Black and silver ZTE cellular telephone FCC ID: SRQ-Z320;
(2) Black and silver Alcatel Onetouch cellular telephone FCC ID: 2ACCJB011;
(3) Black and silver LG cellular telephone FCC ID: ZNFK330;

(4) Blue and black Samsung cellular telephone FCC ID: A3LSMB311V;

(5) White and silver cellular telephone FCC ID: BCG-E3087A

hereinafter the "Devices." The Devices are currently located in law enforcement custody within Montgomery County, Ohio.

5. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

6. The information contained in this affidavit is largely based upon my knowledge of this investigation, based upon my own personal observations, as well as the observations and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in the subject investigation. All of the details of the investigation are not included in this affidavit, only information necessary to establish probable cause that evidence associated with drug trafficking offenses is located in the Devices.

7. Based on my aforementioned training and experience, I am familiar with the modus operandi of persons involved in the illicit distribution of controlled substances and know that drug traffickers frequently use cellular phones to carry out their activities. They use cellular phones to communicate with customers, their associates, and their suppliers. It is often common for drug traffickers to have multiple cellular phones because certain cellular phones may be used only for certain purposes. For instance, a trafficker may use one cellular phone just to speak to his supplier, while using a different cellular phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the cellular phones and his associates. Traffickers commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little to no identifying information

to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number.

8. I also know that traffickers commonly text message each other or their customers, such as meeting locations, prices, and other information needed to carry out the sale of drugs (sometimes in code). They commonly store phone numbers for their associates and customers in the electronic phone book/contacts list, often under alias or code names. I know that traffickers will sometimes use the cellular phone to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on the cellular phone. Information can also be downloaded from the internet onto the cellular phone, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs. Call data, such as missed calls, received calls, or dialed calls are often electronically stored in the cellular phone. The information electronically stored on a cellular phone can also be evidence of who possessed or used a cellular phone at a given time, can contain direct evidence of drug trafficking acts, and can help identify drug trafficking locations or associates. I am aware that there are tools to extract electronic data from a cellular phone so that law enforcement can review it for items of evidentiary value.

## SUMMARY OF PROBABLE CAUSE

9. On October 19, 2017, members of the FBI's Southern Ohio Safe Streets Task Force (SOSSTF), members of the Regional Agencies Narcotics and Gun Enforcement Task Force (RANGETF), and I conducted a surveillance operation in the Dayton, Ohio area. The objective of the operation was to locate and arrest fugitive Colin Crump, who had a state arrest warrant (case

3

number 2017CRA1448) for F3 Failure to Comply. The surveillance operation was supported by Ohio State Highway Patrol (OSHP) aerial surveillance.

10. At approximately 11:18 a.m., task force members located a black Nissan Altima bearing Kentucky registration 022WZB at the Sunoco Gas Station, located at 1726 S. Broadway Street in Dayton, Ohio. Based on real time cell site tower ping locations, pursuant to a ping order I obtained for a cellular telephone number believed to be in Crump's possession, task force members suspected that Crump was an occupant of the Nissan Altima. Task force members were able to observe that the Nissan Altima was occupied by at least a driver and a passenger. Task force members began to conduct ground and aerial surveillance on the Nissan Altima after it departed from the Sunoco Gas Station.

11. The occupants of the Nissan Altima drove to the area of Eleanor Avenue and Home Avenue, at which point aerial surveillance observed the Nissan Altima pull up and stop beside an unknown make and model blue vehicle. Based on the occupants of the Nissan Altima briefly parking alongside the blue vehicle and then immediately departing the area, task force members suspected the occupants of the Nissan Altima engaged in a car-to-car drug transaction with the occupants of the blue vehicle. The Nissan Altima and blue vehicle departed the area prior to ground surveillance members arriving in the area. Aerial surveillance continued to follow the Nissan Altima as it traveled on several streets in the Dayton area.

12. The Nissan Altima drove to the area of Paul Laurence Dunbar Street and Germantown Street where an unidentified passenger exited the Nissan Altima. The unidentified passenger entered the car wash business located on Paul Laurence Dunbar Street and Germantown Street. Aerial surveillance maintained a visual on the Nissan Altima as it immediately departed

the area. Special Agent (SA) Nick Graziosi and I maintained a visual on the car wash in an attempt to identify if the occupant who exited the Nissan Altima was Crump. Aerial surveillance continued to follow the Nissan Altima after it departed from Paul Laurence Dunbar Street and Germantown Street. At times, the driver of the Nissan Altima would drive erratically and disobey traffic control devices.

13. Aerial surveillance followed the Nissan Altima to the area of Pulaski Street and Lincoln Avenue where they observed a black male, later identified as JOHN ELLIOTT, exit the Nissan Altima. The Nissan Altima appeared to be backed into a driveway or parking space on Pulaski Street. Aerial surveillance advised that they suspected ELLIOTT exited from the driver's seat of the Nissan Altima. Aerial surveillance advised ELLIOTT was wearing a white t-shirt, dark colored pants, and he was carrying a black bag and a cell phone. Aerial surveillance maintained a visual on ELLIOTT as he walked through yards and then down the middle of Ceil Court, until task force members arrived in the area to attempt to make contact with and identify ELLIOTT.

14. Dayton Police Detectives Jason Rhodes and Dustin Phillips were first to arrive in the area of Cecil Court. When Detective Rhodes exited their vehicle to attempt to make contact with ELLIOTT, ELLIOTT immediately took off running. Detective Rhodes pursued ELLIOTT on foot to the area of 222 Warren Street where ELLIOTT was subsequently taken into custody after ignoring officer's commands and resisting arrest. ELLIOTT was found to have several active warrants for his arrest through Montgomery County and Butler County. ELLIOTT was booked into the Montgomery County Jail on the confirmed arrest warrants and a preliminary state weapons charge.

15. Detective Rhodes recovered the black bag that ELLIOTT possessed while fleeing on

foot. Detective Rhodes discovered the black bag contained several items, including but not limited to: a loaded Kel-Tec handgun and a plastic baggie containing a white powdery substance, suspected to be fentanyl. Detective Rhodes initially maintained custody of the black bag and contents until he later turned it over into the custody of your Affiant.

16. I later inventoried the contents of the black bag that ELLIOTT possessed at the time of his arrest. The black bag contained the following items: a Kel-Tech, model PMR-30 handgun, serial number WOE16, with one magazine and (24) .22 caliber bullets; five cellular telephones (one of which ELLIOTT was believed to be holding when fleeing from Detective Rhodes); a digital scale with residue; a clear plastic baggie containing a white powdery substance; a box of plastic sandwich baggies; $860.00 United States currency; and a blue plate with residue. The black bag also contained miscellaneous items including a toothbrush, cologne, Kroger card, Aspirin, and a charging cord.

17. The clear plastic baggie containing a white powdery substance had an approximate field weight of 11 grams. I submitted the plastic baggie containing a white powdery substance to the Miami Valley Regional Crime Laboratory (MVRCL) for analysis and the lab results are pending. Additionally, I submitted the Kel-Tech handgun to the MVRCL for operability. On November 15, 2017, I received lab results from the MVRCL indicating the Kel-Tech handgun was examined and found to be operable.

18. Based on a review of ELLIOTT's criminal history, I know that ELLIOTT was convicted in 2017 in the State of Ohio for F2 Possession of Heroin. In 2015, ELLIOTT was convicted in the State of Ohio for F3 Failure to Comply with an Order or Signal of a Police Officer. In 2010, ELLIOTT was convicted in the State of Ohio for F2 Improperly Discharging a Firearm at or into

a Habitation.

19. Based on the above information, I believe that the Devices seized from ELLIOTT at the time of his arrest may contain phone numbers, text messages, and other electronically stored information related to the sale and supply of the suspected fentanyl, ELLIOTT's associates, or other evidence of drug trafficking.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

8

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP

10

      addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as wireless telephone, digital camera, GPS navigation device, PDA and can access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

11

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit that there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the

//
//
//
//
//
//
//
//
//

examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Frederick D. Zollers* TFO FBI
Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this 6th day of December, 2017.

_____
MICHAEL NEWMAN
UNITED STATES MAGISTRATE JUDGE